**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIG RESS and CARL COGDILL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE DIVEHEART FOUNDATION, a corporation | ) | Case No. 19 CV 5776 |
| | ) | |
| Defendant. | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| | ) | |
| THE DIVEHEART FOUNDATION, a corporation | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CRAIG RESS, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**DIVEHEART'S FIRST AMENDED ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIM**

NOW COMES the Defendant, THE DIVEHEART FOUNDATION ("Diveheart") and hereby answers the First Amended Complaint filed by Plaintiffs CRAIG RESS ("Ress") and CARL COGDILL ("Cogdill"), (collectively, "Plaintiffs") as follows:

## I.    INTRODUCTION

1.      This is a disability discrimination case on behalf of accomplished scuba divers, whose certifications were unjustifiably and unlawfully modified and/or revoked by Defendant The Diveheart Foundation ("Diveheart"). This civil action seeks to redress Diveheart's willful violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181, *et seq*. ("ADA") and the Illinois Human Rights Act, 775 ILCS 5, *et seq*. ("IHRA"). Specifically, Plaintiffs Craig Ress and Carl Cogdill ("Plaintiffs") bring this action for declaratory judgment, injunctive relief, and damages for denial of access to, and the full and equal enjoyment of, the goods, services, facilities, privileges, advantages, or accommodations of Diveheart because Plaintiffs' scuba diving certificates issued by Diveheart were unjustifiably modified or revoked on the basis of Plaintiffs' disabilities.

**ANSWER:** Diveheart admits that Plaintiffs purport to bring this action under the statutes listed. Diveheart denies that Plaintiffs' claims are properly brought or have any merit and therefore denies the remaining allegations of Paragraph 1.

## II.    JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.§§ 1331 and 1343 because Plaintiffs assert a claim under the Americans with Disabilities Act of 1990, Pub. L. 101-335, 104 Stat. 327 (codified at 42 U.S.C. §§ 12101-12213).

**ANSWER:**  Paragraph 2 calls for a legal conclusion to which no response is required.  To the extent a response is required, Diveheart admits that Plaintiffs purport to bring this action under the Americans with Disabilities Act and that this Court has jurisdiction over this cause of action under 28 U.S.C. § 1331.  Diveheart denies that Plaintiffs' claims are properly brought or have any merit and therefore denies the remaining allegations of Paragraph 2.

3.      This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a), which confers federal subject matter jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Plaintiffs' state-law claims arise from a common set of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy. The Illinois Department of Human Rights issued to Plaintiff Craig Ress a Notice of Right to Commence Civil Action concerning his Illinois Human Rights Act claim on August 13, 2019. This civil action was filed within 95 days of that Notice. The Illinois Department of Human Rights issued to Plaintiff Carl Cogdill a Notice of Right to Commence Civil Action concerning his Illinois Human Rights Act claim on October 8, 2019. This amended complaint is being filed within 95 days of that Notice.

**ANSWER:** Paragraph 3 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart admits that Plaintiffs purport to bring this action under the Illinois Human Rights Act and that this Court has supplemental jurisdiction over this cause of action under 28 U.S.C. § 1367(a). Diveheart denies that Plaintiffs' claims are properly brought or have any merit and therefore denies the remaining allegations of Paragraph 3.

4.      This Court has personal jurisdiction over Defendant, because Diveheart is headquartered in and regularly conducts business in the state of Illinois and in this judicial district.

**ANSWER:** Paragraph 4 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart admits that it is 501(c)(3) non-profit organization chartered in the state of Illinois, which offers programming in Illinois.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this action occurred in this district and because Defendant resides in this district.

**ANSWER:** Paragraph 5 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart admits that venue is proper in this judicial district. Diveheart denies that Plaintiffs' claims are properly brought or have any merit and therefore denies the remaining allegations of Paragraph 5.

### III.    PARTIES

6.    Plaintiff Craig Ress ("Dr. Ress") is an adult resident of the state of Florida and a medical doctor. Dr. Ress has spinal and lower limb abnormalities resulting from cancer at an early age, and he is an individual with a disability as defined in the ADA. Dr. Ress is also a scuba diving instructor, certified as an instructor by several internationally recognized scuba diving schools and specializing in scuba diving instruction of people with disabilities.

**ANSWER:** On information and belief, Diveheart admits that Ress is an adult residing in Florida. Diveheart lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations of Paragraph 6 and on that basis denies them.

7.    Plaintiff Carl Cogdill ("Mr. Cogdill") is an adult resident of the state of Texas. Mr. Cogdill has T-4 paraplegia and is an individual with a disability as defined in the ADA. Mr. Cogdill is a scuba diving buddy, certified by an internationally recognized scuba diving agency.

**ANSWER:** On information and belief, Diveheart admits that Cogdill is an adult residing in Texas. Diveheart lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations of Paragraph 7 and on that basis denies them.

8.    Defendant The Diveheart Foundation ("Diveheart") is a place of education and a place for exercise and recreation. Diveheart claims that its mission is "to provide and support educational scuba diving programs that are open to any child, adult or veteran with a disability." Among the goods and services provided by Diveheart are several courses to become a certified scuba diving instructor of students with disabilities, referred to as "adaptive divers."

**ANSWER:** Diveheart admits that its purpose includes providing and supporting "educational scuba diving programs that are open to any child, adult or veteran with a disability," but states that Plaintiff incompletely quotes this sentence from its website, which states in full: "The purpose of Diveheart is to provide and support educational scuba diving programs that are open to any child, adult or veteran with a disability, with the hope of providing both physical and psychological therapeutic value to that person." Diveheart further states that its mission statement is "[t]o build confidence, independence and self-esteem in the lives of children, adults and veterans with disabilities through scuba diving, scuba therapy and related activities." Diveheart further

- 4 -

admits that its scuba diving programs include certification of scuba diving instructors who can train students with disabilities, referred to as "adaptive divers," to scuba dive. Diveheart denies the allegation that it is "a place of education and a place for exercise and recreation" on the basis that Diveheart does not own and operate any physical location where instruction, recreation, and exercise occurs. Except as expressly admitted, Diveheart denies the remaining allegations of Paragraph 8.

## IV.    FACTS

### A. Services Offered by Diveheart

9.    Diveheart offers four adaptive scuba training courses. These are: 1) the Adaptive Diver Course (for persons with disabilities wishing to learn to learn how to scuba dive); 2) the Adaptive Dive Buddy Course; 3) the Advanced Adaptive Dive Buddy Course; and 4) the Adaptive Instructor Course.

**ANSWER:** Diveheart admits the allegations of Paragraph 9.

10.    Certification as an Adaptive Dive Buddy entitles one to assist adaptive diving students, under the supervision of a certified adaptive instructor, in Diveheart Scuba Experiences and in trainings to become adaptive divers.

**ANSWER:** Diveheart denies the allegations of Paragraph 10.

11.    Certification as an Advanced Adaptive Dive Buddy entitles one to perform the same duties as an Adaptive Dive Buddy, but with more complex situations, such as quadriplegic adaptive diving students.

**ANSWER:** Diveheart denies the allegations of Paragraph 11.

12.    Certification as an Adaptive Instructor entitles one to lead DiveheartScuba Experiences, lead trainings of adaptive divers and adaptive dive buddies, and determine whether to award certifications as adaptive divers and adaptive dive buddies to students. In a typical Adaptive Diver Course, there is a team of divers led by one certified Adaptive Instructor.

**ANSWER:** Diveheart admits the allegations contained in the second sentence of the Paragraph 12. Diveheart denies the remaining allegations of Paragraph 12.

13.     The Diveheart Adaptive Diver Training Manual provides that a certified Diveheart Adaptive Diver is eligible to advance his training to become a certified Adaptive Dive Buddy or Adaptive Scuba Instructor.

**ANSWER:** Diveheart denies the allegations of Paragraph 13.

### B. Dr. Ress's Certification by Diveheart as an Adaptive Instructor

14.     Dr. Ress learned to scuba dive more than 40 years ago, when he was approximately 12 years old. In 2017, Dr. Ress began taking courses through Diveheart to become a scuba diving instructor for adaptive diving students. Dr. Ress excelled at Diveheart's course, completing the curriculum offered by Diveheart. In 2017, he became a certified Diveheart Adaptive Instructor, which entitled him to lead Diveheart Scuba Experiences and to lead the training of people wishing to become adaptive divers and adaptive dive buddies. This certification also allowed Dr. Ress to lead such teams without the presence of another Adaptive Instructor, and entitled Dr. Ress to determine, based on his evaluation of his students, whether to certify such students as adaptive divers and adaptive dive buddies.

**ANSWER:**  Diveheart lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the first sentence of paragraph 14 and on that basis denies them. Diveheart admits that Ress completed the Adaptive Instructor Diveheart curriculum and received an Adaptive Instructor certification, subject to certain conditions, in 2017. Diveheart denies the remaining allegations of Paragraph 14.

15.     Dr. Ress obtained similar certifications from other schools offering certifications as scuba diving instructors for disabled individuals, including the Handicapped Scuba Association and Scuba Diving International.

**ANSWER:** Diveheart admits that Handicapped Scuba Association and Scuba Diving International offers certifications for scuba diving instructors of disabled individuals, but denies that certifications from the Handicapped Scuba Association and Scuba Diving International are "similar" to Diveheart's Adaptive Instructor certification.  Diveheart lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations of Paragraph 15, and on that basis denies them.

- 6 -

16. Following receipt of his Diveheart certification, Dr. Ress used this certification to train more than 20 adaptive divers. During these trainings, Dr. Ress was often the only certified Diveheart scuba diving instructor, as allowed by his certification and as was known and approved of by Diveheart. Diveheart Executive Director, Tinamarie Hernandez asked Dr. Ress to conduct additional similar trainings in South Africa.

**ANSWER:** Diveheart denies the allegations of Paragraph 16.

### C. Diveheart's Restrictions on Plaintiff Craig Ress's Certification

17. In August 2018, Dr. Ress expressed concern via email to Diveheart Founder and President Jim Elliott and Executive Director Tinamarie Hernandez regarding mismanagement by Diveheart's Florida leadership. Specifically, Dr. Ress complained that the leader of the South Florida Diveheart Unit, Wilhelmina Stanton, was disorganized, used bad equipment and was abusive to and screamed at dive buddies. At the time Dr. Ress made this complaint to Diveheart President Jim Elliott, Ms. Stanton was in a romantic relationship with Mr. Elliott.

**ANSWER:** Diveheart admits that Ress sent an email to Diveheart Founder and President Jim Elliott and Executive Director Tinamarie Hernandez on August 25, 2018 withdrawing from any Diveheart activities that involved the participation of Wilhelmina Stanton, Diveheart lead in South Florida. Diveheart admits that in or about August, 2018, Jim Elliott and Wilhelmina Stanton shared a personal and professional relationship. Diveheart denies the accuracy of the allegations contained in the August 25, 2018 email referenced in Paragraph 17 and further denies the remaining allegations of Paragraph 17.

18. Rather than address these concerns, Mr. Elliot immediately placed restrictions on Dr. Ress's Adaptive Instructor certification, citing his disability as the basis for such restrictions. These restrictions prevented Dr. Ress from providing trainings with his Diveheart certification unless he was accompanied by a second certified professional Diveheart adaptive instructor.

**ANSWER:** Diveheart admits that Ress's Diveheart Adaptive Instructor certification included the condition that an insured certified Diveheart professional assist with certain required demonstrations that Ress was unable to physically perform himself. Diveheart denies that these conditions were placed on his certification because of Ress's August 2018 email. Diveheart denies the remaining allegations of Paragraph 18.

19.     These new restrictions were wholly inconsistent with the prior trainings Dr. Ress provided pursuant to his Diveheart certification. Dr. Ress had conducted several trainings for adaptive divers with Diveheart's knowledge and consent using assistants who were not adaptive instructors, just as any other Diveheart instructor would do.

**ANSWER:** Diveheart denies the allegations of Paragraph 19.

20.     Requiring a second certified professional Diveheart adaptive instructor to accompany Dr. Ress meant that Diveheart had effectively eliminated Dr. Ress' ability to be hired as an instructor, since a "two certified professional Diveheart adaptive instructor" rule would create unnecessary redundancy and typically mean double the pricing for any student wishing to use his services. These restrictions have also caused Dr. Ress great emotional pain and embarrassment, as he has been unable to explain to diving colleagues and students why Diveheart has modified his certification.

**ANSWER:**  Diveheart denies the allegations of Paragraph 20.

21.     These restrictions were and are wholly unjustified. Dr. Ress met all of the standards to be a certified professional Adaptive Instructor without such restrictions prior to September 2018, and he continues to meet all of those standards today. Dr. Ress also holds similar certifications without restrictions from other certification schools, including the Handicapped Scuba Association and Scuba Diving International.

**ANSWER:**  Diveheart denies that certifications from the Handicapped Scuba Association and Scuba Diving International are "similar" to Diveheart's Adaptive Instructor certification. Diveheart lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations that Ress holds certifications from the Handicapped Scuba Association and Scuba Diving International and on that basis denies them.  Diveheart denies the remaining allegations of Paragraph 21.

22.     Following the implementation of these restrictions, Dr. Ress, through counsel, attempted to resolve this matter with Diveheart, culminating in a detailed letter sent to Diveheart's counsel on February 18, 2019.  Diveheart refused to remove these restrictions.

**ANSWER:**  Diveheart admits that it received a letter from Ress's counsel on February 18, 2019 and that Diveheart did not remove the conditions placed on Ress's Adaptive Instructor certification following receipt of this letter.  Diveheart denies the remaining allegations of Paragraph 22.

### D. Carl Cogdill's Certification as an Advanced Adaptive Dive Buddy

23.     Mr. Cogdill has been a scuba diver for approximately 3 years.  In 2018, Mr. Cogdill began taking courses through Diveheart to become an Advanced Adaptive Dive Buddy. Mr. Cogdill excelled at these courses, rising through stages of the curriculum offered by Diveheart. In 2018, Mr. Cogdill was certified by Diveheart as an Advanced Adaptive Dive Buddy. This certification entitled Mr. Cogdill to assist the teams instructing people to become adaptive divers.

**ANSWER:**  Diveheart lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in the first sentence of Paragraph 23 and on that basis denies them.  Diveheart denies the remaining allegations of Paragraph 23.

24.     Mr. Cogdill's performance as an Advanced Adaptive Dive Buddy was exemplary. After receiving his certification he performed the functions of this role on at least 15 occasions, often exceeding the performance of other participants without disabilities.

**ANSWER:**  Diveheart denies the allegations of paragraph 24.

25.     Mr. Cogdill has obtained a similar certification from the Professional Association of Diving Instructors (PADI).

**ANSWER:** Diveheart denies that a certification from the Professional Association of Diving Instructors (PADI) is "similar" to a Diveheart certification.  Diveheart lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations of Paragraph 25 and on that basis denies them.

### E. Diveheart's Revocation of Carl Cogdill's Certification

26.     On February 22, 2019, Mr. Cogdill received a phone call from Diveheart Founder and President Jim Elliott. During this call, Mr. Elliott informed Mr. Cogdill that his certification as an Advanced Dive Buddy was being revoked because of his disability.

**ANSWER:** Diveheart admits that on or around February 22, 2019, Diveheart Founder and President Jim Elliott called Cogdill. Diveheart denies the remaining allegations of Paragraph 26.

27.     This revocation was and is wholly unjustified.  Mr. Cogdill met all of the standards to be an Advanced Dive Buddy prior to February 22, 2019, and continues to meet all of those standards today. This revocation has caused Mr. Cogdill great emotional pain and embarrassment, as he has been unable to explain to diving colleagues why Diveheart has revoked his certification, and has hindered his ability to secure positions as a dive buddy with other diving teams.

**ANSWER:** Diveheart denies the allegations of Paragraph 27.

28.     The timing of this revocation, coming days after Dr. Ress made clear what steps Diveheart must take to avoid legal action, appears to be an attempt by Diveheart to justify its disability discrimination against Dr. Ress by revoking other certifications held by persons with disabilities.

**ANSWER:** Diveheart denies the allegations of Paragraph 28.


## V.     CLAIM FOR RELIEF

29.     Plaintiffs reallege and reincorporate by reference the allegations set forth in this Complaint as if fully set forth herein.

**ANSWER:** Paragraph 29 is a statement reincorporating Plaintiffs' allegations in

Paragraphs 1 through 28 to which no response is required. To the extent a response is required,

Defendant reincorporates its responses to Paragraphs 1 through 28.


**COUNT ONE**
**Discrimination on the Basis of a Disability in Violation of the Americans with**
**Disabilities Act (42 U.S.C. §§ 12181, *et seq.*)**
**On Behalf of Both Plaintiffs**

30.     On July 26, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

**ANSWER:** Paragraph 30 calls for a legal conclusion to which no response is required. To

the extent a response is required, Diveheart states that Paragraph 30 accurately quotes 42 U.S.C. §

12101(b)(1).

31.     Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any public place of accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

**ANSWER:** Paragraph 31 calls for a legal conclusion to which no response is required. To

the extent a response is required, Diveheart states that Paragraph 31 accurately quotes 42 U.S.C. §

12182(a).

32.    Diveheart is a "place of public accommodation" within the meaning of the ADA. 42 U.S.C. § 12181(7).

**ANSWER:**  Paragraph 32 calls for a legal conclusion to which no response is required.  To the extent a response is required, Diveheart denies the allegations of Paragraph 32.

33.    Defendant is a "private entity who owns . . . or operates a place of public accommodation," and therefore has obligations under Title III of the ADA. 42 U.S.C. § 12182(a).

**ANSWER:**  Paragraph 33 calls for a legal conclusion to which no response is required.  To the extent a response is required, Diveheart denies the allegations of Paragraph 33.

34.    Title III makes it "discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."  42 U.S.C. § 12182(b)(1)(A)(i).

**ANSWER:**  Paragraph 34 calls for a legal conclusion to which no response is required.  To the extent a response is required, Diveheart states that Paragraph 34 accurately quotes 42 U.S.C. § 12182(b)(1)(A)(i).

35.    Title III further makes it "discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

**ANSWER:** Paragraph 35 calls for a legal conclusion to which no response is required.  To the extent a response is required, Diveheart states that Paragraph 35 accurately quotes 42 U.S.C. § 12182(b)(1)(A)(ii).

36.    Title III further makes it "discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals . . . ." 42 U.S.C. § 12182(b)(1)(A)(iii).

**ANSWER:**  Paragraph 36 calls for a legal conclusion to which no response is required.  To the extent a response is required, Diveheart states that Paragraph 36 accurately quotes part of 42

- 11 -

U.S.C. § 12182(b)(1)(A)(iii). Diveheart further states that the remaining part of 42 U.S.C. § 12182(b)(1)(A)(iii) states: "….unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others."

37. Title III provides that the term "individuals" refers to "clients or customers of the covered public accommodation." 42 U.S.C. § 12182(b)(1)(A)(iv).

**ANSWER:** Paragraph 37 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart states that Paragraph 37 accurately quotes 42 U.S.C. § 12182(b)(1)(A)(iv).

38. Diveheart's scuba diving training courses and certifications are goods, services, facilities, privileges, advantages, or accommodations of Diveheart, and Plaintiffs are clients or customers of Diveheart.

**ANSWER:** Paragraph 38 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart denies the allegations of Paragraph 38.

39. Title III further provides that "discrimination includes:

(i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered; [and]

(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."

42 U.S.C. § 12182(b)(2)(A)(i-ii).

**ANSWER:** Paragraph 39 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart states that Paragraph 39 accurately quotes 42 U.S.C. § 12182(b)(2)(A)(i-ii).

40. Defendant's restrictions on and revocation of Plaintiffs' certifications on the basis of a disability or perceived disability are a denial of Plaintiffs' opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Diveheart.

**ANSWER:** Diveheart denies the allegations of Paragraph 40.

41. Defendant's restrictions on and revocation of Plaintiffs' certifications on the basis of a disability or perceived disability means that Plaintiffs' opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation of Diveheart is not equal to that afforded to other individuals without disabilities.

**ANSWER:** Diveheart denies the allegations of Paragraph 41.

42. Defendant's restrictions on and revocation of Plaintiffs' certifications on the basis of a disability or perceived disability provides Plaintiffs with a good, service, facility, privilege, advantage, or accommodation of Diveheart that is different or separate from that provided to other individuals.

**ANSWER:** Diveheart denies the allegations of Paragraph 42.

43. Defendant's restrictions on and revocation of Plaintiffs' certifications on the basis of a disability or perceived disability is an imposition or application of eligibility criteria that screens out or tends to screen out an individual with a disability from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations of Diveheart, and such criteria are unnecessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.

**ANSWER:** Diveheart denies the allegations of Paragraph 43.

44. Defendant's restrictions on and revocation of Plaintiffs' certifications on the basis of a disability or perceived disability is a failure of Defendant to make reasonable modifications in its policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to Plaintiffs.

**ANSWER:** Diveheart denies the allegations of Paragraph 44.

45. Defendants' conduct has harmed Plaintiffs and will continue to harm them until Defendant is ordered by this Court to cease discriminating against Plaintiffs on the basis of their disability.

**ANSWER:** Diveheart denies the allegations of Paragraph 45.

46.     For Defendant's violation of the ADA, Plaintiffs are entitled to declaratory and injunctive relief to prevent Defendant from discriminating against them on the basis of their disability, and Defendant is liable to Plaintiffs for costs and attorneys' fees, and all other available relief.

**ANSWER:** Diveheart denies the allegations of Paragraph 46.

## COUNT TWO
### Discrimination on the Basis of a Disability in Violation of the Illinois Human Rights Act On Behalf of Both Plaintiffs

47.     The Illinois Human Rights Act is intended to prevent and eliminate discriminatory practices in places of public accommodation because of an individual's actual or perceived disability. 775 ILCS 5/1-102(A).

**ANSWER:** Paragraph 47 calls for a legal conclusion to which no response is required.  To the extent a response is required, Diveheart lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the intent of the Illinois Human Rights Act and on that basis denies the same.  Diveheart admits that 775 ILCS 5/1-102(A) states that "[i]t is the public policy of this State…[t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry, age, order of protection status, marital status, physical or mental disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations."

48.     The Illinois Human Rights Act prohibits discrimination on the basis of "disability," which is defined to include "a determinable physical or mental characteristic of a person, including, but not limited to, a determinable physical characteristic which necessitates the person's use of a guide, hearing or support dog, the history of such characteristic, or the perception of such characteristic by the person complained against, which may result from disease, injury, congenital condition of birth or functional disorder and which characteristic . . . is unrelated to a person's ability to utilize and benefit from a place of public accommodation." 775 ILCS 5/1-103(I).

**ANSWER:** Paragraph 48 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart states that Paragraph 48 accurately quotes 775 ILCS 5/1-103(I) and 775 ILCS 5/1-103(I)(4).

49. It is a civil rights violation under the Illinois Human Rights Act "for any person on the basis of unlawful discrimination to...[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A).

**ANSWER:** Paragraph 49 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart states that Paragraph 49 accurately quotes 775 ILCS 5/5-102(A).

50. Diveheart is a "place of public accommodation" within the meaning of the IHRA.

**ANSWER:** Paragraph 50 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart denies the allegations of Paragraph 50.

51. Plaintiffs are persons with a disability within the meaning of the IHRA.

**ANSWER:** Paragraph 51 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart denies the allegations of Paragraph 51.

52. Diveheart's scuba diving training courses and certifications are goods, services or facilities of Diveheart, and Plaintiffs are clients or customers of Diveheart.

**ANSWER:** Paragraph 52 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart denies the allegations of Paragraph 52.

53. Defendant's denial to Plaintiff Ress of a certification without restrictions, on the basis of his disability or perceived disability, is a denial of access to Defendant's facilities, goods and services.

**ANSWER:** Paragraph 53 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart denies the allegations of Paragraph 53.

54. Defendant's revocation of Plaintiff Cogdill's certification, on the basis of his disability or perceived disability, is a denial of access to Defendant's facilities, goods and services.

**ANSWER:** Paragraph 54 calls for a legal conclusion to which no response is required. To the extent a response is required, Diveheart denies the allegations of Paragraph 54.

55. Defendant's denial to Plaintiff Ress of a certification without restrictions, on the basis of his disability or perceived disability, is a denial of the full and equal enjoyment of Defendant's facilities, goods and services.

**ANSWER:** Diveheart denies the allegations of Paragraph 55.

56. Defendant's revocation of Plaintiff Cogdill's certification, on the basis of his disability or perceived disability, is a denial of the full and equal enjoyment of Defendant's facilities, goods and services.

**ANSWER:** Diveheart denies the allegations of Paragraph 56.

57. Defendant's restrictions on Plaintiff Ress's certification on the basis of a disability or perceived disability means that Plaintiff Ress's opportunity to participate in or benefit from a good, service, or facility of Diveheart is not equal to that afforded to other individuals without disabilities.

**ANSWER:** Diveheart denies the allegations of Paragraph 57.

58. Defendant's revocation of Plaintiff Cogdill's certification on the basis of a disability or perceived disability means that Plaintiff Cogdill's opportunity to participate in or benefit from a good, service, or facility of Diveheart is not equal to that afforded to other individuals without disabilities.

**ANSWER:** Diveheart denies the allegations of Paragraph 58.

59. Defendant's restrictions on Plaintiff Ress's certifications on the basis of a disability or perceived disability provides Plaintiff with a good, service, or facility of Diveheart that is different or separate from that provided to other individuals.

**ANSWER:** Diveheart denies the allegations of Paragraph 59.

60. Defendant's revocation of Plaintiff Cogdill's certification on the basis of a disability or perceived disability provides Plaintiff with a good, service, or facility of Diveheart that is different or separate from that provided to other individuals.

**ANSWER:** Diveheart denies the allegations of Paragraph 60.

61.     Defendant's conduct has harmed Plaintiffs financially and reputationally, and has caused substantial mental and emotional distress, as well as the stigmatizing injury and deprivation of personal dignity that accompanies the denial of equal access to a place of public accommodation. Defendant's conduct will continue to harm Plaintiffs until Defendant is ordered by this Court to cease discriminating against Plaintiffs on the basis of his their disability and to compensate them for the damages they have suffered from Defendant's discriminatory actions

**ANSWER:** Diveheart denies the allegations of Paragraph 61.

62.     For Defendant's violation of the Illinois Human Rights Act, Plaintiffs are entitled to declaratory and injunctive relief to prevent Defendant from discriminating against them on the basis of their disability, and Defendant is liable to Plaintiffs for actual and punitive damages, costs and attorneys' fees, and all other available relief.

**ANSWER:** Diveheart denies the allegations of Paragraph 62.

## JURY DEMAND

Plaintiffs demand a jury trial as to all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

a.   Declare the acts and omissions of Defendant complained of herein to be in violation of the ADA and the IHRA;
b.   Enter a preliminary and permanent injunction requiring Defendant to stop discriminating against Plaintiffs on the basis of disability, and to modify its policies, practices, and procedures to comply with the ADA and IHRA;
c.   Award Plaintiffs actual and punitive damages for the injuries caused by Defendant's violations of the IHRA;
d.   Award Plaintiffs their costs and attorneys' fees, including litigation expenses, reasonably incurred in the prosecution of the action; and
e.   Award Plaintiffs such other and further relief as this Court shall deem just and proper.

**ANSWER:** Diveheart denies the allegations, whether express or implied, in the

unnumbered Jury Demand and Prayer for Relief and further denies that Plaintiffs are entitled to

any relief whatsoever.

WHEREFORE, Defendant Diveheart Corporation denies that Plaintiffs are entitled to any relief whatsoever and respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice and that Diveheart be awarded its costs and attorneys' fees, together with such other relief the Court deems just and proper.

- 17 -

## DEFENDANT'S AFFIRMATIVE AND ADDITIONAL DEFENSES

Diveheart reserves the right to amend its Answer to allege any additional defenses as may later become available or apparent if the facts learned through discovery or otherwise warrant amendment. Nothing stated in the defenses below constitutes a concession that Diveheart bears any burden of proof on any issues on which it would not otherwise bear such a burden.

### First Defense

Plaintiffs' claims are barred to the extent that they failed to meet administrative and/or statutory prerequisites to filing this lawsuit.

### Second Defense

Plaintiffs have failed to allege facts sufficient to entitle them to punitive damages.

### Third Defense

Plaintiffs' claims fail, in whole or in part, because Diveheart at all times engaged in a good faith effort to comply with federal, state or local laws, rules, regulations or guidelines and engaged in a good faith effort to provide Plaintiffs reasonable modifications for their alleged disabilities, and has not violated any rights secured under any federal, state or local laws, rules, regulations or guidelines.

### Fourth Defense

Plaintiffs' claims fail, in whole or in part, because Plaintiffs' requested modifications would impose an undue burden on Diveheart.

### Fifth Defense

Plaintiffs' claims fail, in whole or in part, because Diveheart adequately provided access through readily achievable "alternative methods."

### Sixth Defense

Plaintiffs' claims fail, in whole or in part, because the requested measures would pose a

- 18 -

direct threat the health or safety of Plaintiffs and/or others.

## Seventh Defense

Plaintiffs' claims fail, in whole or in part, because the requested measures would fundamentally alter the nature of the services provided by Diveheart.

## Eighth Defense

To the extent that Plaintiffs have any damages arising from the conduct alleged in the Complaint, Plaintiffs have failed to mitigate, or make reasonable attempts to mitigate, their alleged damages.

## Ninth Defense

Plaintiffs' claims fail because Diveheart does not own, lease, or operate a place of public accommodation.

## Tenth Defense

Plaintiffs fail to state a claim upon which relief can be granted.

## Eleventh Defense

Plaintiffs' claims fail, in whole or in part, because any criteria imposed on Plaintiffs were necessary for the provision of the services being offered.

## DIVEHEART'S COUNTERCLAIM AGAINST PLAINTIFF/COUNTER-DEFENDANT CRAIG RESS

Defendant/counter-plaintiff, THE DIVEHEART FOUNDATION ("Diveheart"), by and through its attorneys, for its counterclaim against plaintiff/counter-defendant Craig Ress ("Ress"), states as follows:

## INTRODUCTION

1.      Diveheart brings this counterclaim to redress false, misleading, and defamatory statements made by Ress and his agents and published by Ress and his agents to third parties.

Ress's defamatory statements derive from his claims against Diveheart in this lawsuit, but go well beyond relating the allegations of his Complaint or the fact that a lawsuit was filed. Ress's false and malicious statements were not made in conjunction with these proceedings or for the purpose of advancing these proceedings, but rather were intended and have the effect of impugning Diveheart's good name and reputation. Ress's statements are defamatory *per se* and defamatory *per quod* in that they have caused actual damage to Diveheart, including harming Diveheart's fundraising efforts and its corresponding ability to provide programming and services to disabled individuals.

## PARTIES

2.      Defendant/counter-plaintiff Diveheart Foundation is a not-for-profit Section 501(c)(3) corporation incorporated in the State of Illinois. Diveheart's mission is to build confidence, independence and self-esteem in the lives of children, adults, and veterans with disabilities through scuba diving, scuba therapy, and related activities.

3.      More specifically, Diveheart's operations include providing and supporting various educational scuba diving programs for children, adults, and veterans with disabilities. Among its programming, Diveheart offers opportunities for individuals who meet Diveheart's instructional standards to obtain Diveheart-sponsored certifications to instruct disabled individuals in connection with scuba diving activities. Diveheart maintains exacting standards for such certifications to ensure that individuals who are certified as Diveheart instructors can safely supervise and instruct disabled divers.

4.      Plaintiff/counter-defendant Craig Ress is an adult resident of the State of Florida. Ress, along with co-plaintiff Carl Cogdill, filed this action, complaining that Diveheart discriminated against them in violation of federal and state anti-discrimination laws by modifying

or revoking their Diveheart certifications for instructing disabled individuals in connection with scuba diving activities.

## JURISDICTION

5.     This Court has subject-matter jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the jurisdictional amount of $75,000, exclusive of costs and interest.

## FACTS

6.     On August 28, 2019, plaintiff/counter-defendant Craig Ress and co-plaintiff Carl Cogdill, by and through their attorneys Rachel M. Weisberg of Equip for Equality, and Matthew K. Handley of Handley Farah & Anderson PLLC, filed their Complaint in this action, alleging that Diveheart violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, et seq. and the Illinois Human Rights Act, 775 ILCS 5, et seq. by revoking or modifying their Diveheart certifications.

7.     Around the same time as his initiation of this lawsuit, Ress intentionally and maliciously launched a false, misleading, and defamatory attack campaign against Diveheart. This campaign has included the wide dissemination of false and misleading statements contained in a press release issued by the organization Equip for Equality.

8.     Equip for Equality is a private, not-for-profit organization that promotes self-advocacy and serves as a legal advocate for people with disabilities, and handles individual cases and systems-change litigation to achieve broad-based societal reforms.  Equip for Equality represents Ress as his attorney and agent in connection with his claims against Diveheart in this litigation.

9.     On August 30, 2019, Ress published a post to his public Facebook page. Ress's August 30, 2019 Facebook post stated, "Carl [Cogdill] and myself have instituted lawsuit against the diveheart foundation for discrimination against people with disabilities." Ress's post included a string of "hashtags" designed to attract and promote views of his post, including "#disability #disabled #amazing #specialneeds #ican #disabilityawareness #reallifesuperheroes #adaptivelifestyle #adaptivecommunity #iamadaptive #independence #nevergiveup #amazingpeople #adaptandconquer #handicapable #scubatherapy #scubatreatment #scuba." Ress's post also included an image copy of Diveheart's registered trademark with the words "SAY NO TO DISCRIMINATION" imprinted across the front of the imaged trademark. Finally, Ress's post included a hyperlink to the web page https://www.equipforequality.org/news-item/ada-lawsuit-filed-against-scuba-diving-school-for-revoking-and-altering-certifications-of-scuba-divers-with-disabilities/. A screenshot copy of Ress's August 30, 2019 Facebook post is attached as **Exhibit A.**

10.     On August 30, 2019, Ress published a post to his public Instagram page (@craigress). Ress's August 30, 2019 Instagram post was identical to his August 30, 2019 Facebook post, as described in Paragraph 9 of this counterclaim. A screenshot copy of Ress's August 30, 2019 Instagram post is attached as **Exhibit B.**

11.     The hyperlinks in Ress's August 30, 2019 Facebook and Instagram posts direct users to a public web page maintained by the Equip for Equality. Specifically, the hyperlinks direct users to an August 30, 2019 press release published by Equip for Equality and maintained on its public website, titled "ADA Lawsuit Filed Against Scuba Diving School for Revoking and Altering Certifications of Scuba Divers with Disabilities" (the "Press Release"). A copy of the Press Release is attached as **Exhibit C.**

12.     The Press Release includes multiple statements that were and are misleading and false.

13.     As demonstrated in Exhibits A-C, Ress has published at least the following false statements to third parties:

(a)     "In September 2018, Diveheart abruptly placed restrictions on Dr. Ress's certification, barring him from conducting adaptive diver trainings without the presence of a second certified professional Diveheart adaptive instructor, citing his disability as the reason for such restriction. . . . Such actions were taken although [Dr. Ress] had consistently and fully performed all of the requirements associated with [his] certification[]."

(b)     "Diveheart's unjustified action has required [Dr. Ress] to file this lawsuit to protect [his] rights to be free from such discrimination . . . ."

(c)     "Commenting on Diveheart's actions, Plaintiffs' counsel Rachel Weisberg of Equip for Equality said, 'The ADA and Illinois Human Rights Act guarantee that people with disabilities have the same opportunities as everyone else to participate in the mainstream of American life.  Diveheart's actions deny these opportunities to persons with disabilities, needlessly and cruelly branding them as not worthy of equal consideration.  We hope this lawsuit has a widespread impact and confirms that people with disabilities have equal opportunity under the law.'"

(d)     "Plaintiffs' counsel Matthew Handley added, 'It is particularly shocking that an organization such as Diveheart, which prides itself on training persons with disabilities, would disallow the same community on whose behalf it claims to act from advancing through its courses.  Dr. Ress and Mr. Cogdill have demonstrated that they are fully qualified for the

certifications they obtained, and any revocation or altering of those certifications is both unwarranted and illegal.'"

14.     Ress knew the Press Release included statements that were and are false, including the statements set forth in Paragraph 13, when he published the Press Release through his August 30, 2019 Facebook and Instagram posts.

15.     Alternatively, Ress published Press Release through his August 30, 2019, Facebook and Instagram posts in reckless disregard of the truth or falsity of the statements contained therein.

16.     By publishing the Press Release, Ress falsely, maliciously, and wrongfully intended to injure and destroy Diveheart's good name and reputation, and to expose Diveheart to public contempt, hatred, suspicion, and financial injury

17.     Ress's August 30, 2019 Facebook and Instagram posts remain posted today on his public Facebook and Instagram pages in the same form as described in Paragraphs 9-11.

18.     The Press Release remains posted today on the Equip for Equality website in the same form as described in Paragraphs 11-13.

19.     The false and misleading statements in the Press Release set forth in Paragraph 13 have been widely disseminated through Ress's public Facebook and Instagram pages and Equip for Equality's public website.

20.     As a result of Ress's publication of false and misleading statements, including as described in Paragraphs 7-13, Diveheart has incurred financial and reputational injury to its business, including lost donations and contributions and diminished goodwill.

## COUNT I: DEFAMATION

21.     Diveheart repeats, re-alleges, and incorporates by reference Paragraphs 1-20 set forth herein.

- 24 -

22.     Ress has made multiple false and misleading statements concerning Diveheart, including as described in Paragraphs 7-13.

23.     Ress has published false and misleading statements concerning Diveheart via nonprivileged channels to third parties, including as described in Paragraphs 7-13.

24.     Ress's false and misleading statements concerning Diveheart, including as described in Paragraphs 7-13, prejudice Diveheart in its trade, profession, or business, including by imputing that Diveheart is unable to perform or lacks integrity in the conduct of its business, and thus are defamatory *per se*.

25.     Diveheart has suffered damage as a result of Ress's publication of false and misleading statements, including harm to its reputation, loss of goodwill, disruption of operations, and lost or diminished fundraising.  Thus, in addition and in the alternative, Ress's false and misleading statements, including as described in Paragraphs 7-13, are defamatory *per quod*.

## PRAYER FOR RELIEF

WHEREFORE,  defendant/counter-plaintiff Diveheart requests that this Court enter judgment in its favor and against plaintiff/counter-defendant Ress on its counterclaim and award the following relief:

a.     That Ress be ordered to remove the public posts containing or referencing false and misleading statements concerning Diveheart and be further enjoined from publishing any additional false, misleading, and defamatory statements concerning Diveheart;

b.     That Ress be ordered to publish a suitable retraction of his defamatory statements in a similar manner to his publication of the statements themselves;

c.     That Ress be ordered to pay Diveheart damages in an amount to be determined at

trial, including actual and consequential, assumed, and punitive damages;

d.  That Diveheart be awarded such other and further relief as may be deemed by this

Court to be just and proper.

Dated:  January 10, 2020                           Respectfully submitted,

                                                   SCHIFF HARDIN LLP,


                                                   By: */s/ Derek Barella*
                                                   Derek Barella (6224422)
                                                   Rebecca Canary-King (6323705)
                                                   233 South Wacker Drive
                                                   Suite 7100
                                                   Chicago, IL  60606
                                                   Telephone: (312) 258-5500
                                                   dbarella@schiffhardin.com
                                                   rcanary-king@schiffhardin.com

                                                   *Attorneys for Diveheart Corporation*

- 26 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused the foregoing document to be electronically filed with the clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to counsel of record.

<u>/s/ *Derek Barella*</u>
Derek Barella

CH2\22908347.1

- 27 -